### VAUGHAN v. CANIK et al. (two cases).

### No. 1274.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

Modisette & Adams, of Jennings, for appellant.

J. Sheldon Toomer, of Lake Charles, for appellee.

*Rehearing denied March 2, 1934.

ELLIOTT, Judge.

Uri Vaughan brought a suit against Paul Canik and L. O. Miller, claiming of them an alleged balance on two promissory notes signed by them. This suit bears the No. 756 on the docket of the district court, parish of Cameron, in which parish the suit was filed.

One of the notes is for $300, bears the date, January 22, 1921, and carries on its back alleged payments of interest amounting to $121. This note is payable six months after date to the order of Frederick Vaughan, and draws interest at the rate of 8 per cent. per annum from maturity until paid, and together with the alleged payments appearing thereon is annexed to, and made part of, the petition.

The other note is for $1,000, bears date February 2, 1921, and carries on its back alleged payments of interest amounting to $700. It is payable one year after date to the order of Uri Vaughan, the petitioner, draws interest at the rate of 8 per cent. per annum from date until paid, and together with the alleged payments appearing thereon is annexed to, and made part of, the petition.

The suit against Paul Canik and J. W. Doxey bears the No. 757 on the docket of the district court, parish of Cameron. It is on a note for $300, dated February 24, 1917, payable one year after date to Frederick Vaughan or bearer, and signed by Paul Canik as principal and J. W. Doxey as surety. It draws interest at the rate of 8 per cent. per annum from date, carries on its back alleged payments of interest, the amount of which is not alleged, but which under our computation amounts to $217, and together with the alleged payments appearing thereon is annexed to, and made part of, the petition.

The defendants in each suit appeared and filed as an exception against plaintiff's demand the prescription of five years.

The suits were then consolidated and transferred to the parish of Calcasieu for the purpose of trying this plea. The consolidated cases were taken up and tried and the testimony completed, except that it was left open for the introduction of a certain bank check, which L. O. Miller, one of the defendants, agreed to produce, if he could, and file as evidence in the case. It appears from subsequent developments that Dr. L. O. Miller reported that he could not find the check, and tendered an ex parte statement concerning it. This ex parte explanation is not found in the record.

While the case was still open, the plaintiff appeared, and, alleging surprise at the testimony of defendants, moved the court to reopen the note of testimony, and that he be permitted to introduce further evidence, the purpose of which was to support the pay-ments alleged to have been made on the notes by showing that same emanated from the makers of the notes and also to show that letters said to have reference to the notes were written by Paul Canik or Dr. L. O. Miller, defendants, or by their authority and direction, acknowledging the alleged indebtedness and interrupting the prescription pleaded by defendants.

The mover also prayed that writs of subpœna duces tecum issue to certain designated parties and banks to produce certain checks and records, and that a commission issue to take the testimony of certain parties and banks in New Orleans, all having in view the end above mentioned.

The motion was overruled. Plaintiff excepted to the ruling. The consolidated cases were then submitted to the court on the question of prescription.

The court rendered judgment in each case, sustaining the plea and rejecting plaintiff's demand. The plaintiff has appealed.

We will consider the two cases together, our opinion to apply to both suits. The only question before us is whether the note of testimony should have been reopened for further testimony as prayed for, because, unless plaintiff can support the last payment appearing on the note of January 22, 1921, and the two last payments on the note of February 2, 1921, and the last payment on the note of February 24, 1917, as having been made by Paul Canik or L. O. Miller at the time the same purports to have been made, by additional evidence, which, with that already in the record, may sufficiently lead to a more satisfactory conclusion, that payments were made as purports to have been done, the judgment appealed from in the consolidated cases should be affirmed.

The two last payments, indorsed on the back of the note, signed January 22, 1921, appear as follows: "April 13th, 1925 pd to Oliver 24.00," then underneath this entry appears the next, "Feb 14th 1929 25.00." The sums "24" and "25" evidently mean that $24 and $25 were paid on the note at the times stated. The two last payments indorsed on the back of the note signed February 2, 1921, appear as follows: "March 1929 $80.00." Then underneath this entry appears an abbreviation in figures, meaning "November 20th., 1929 by check 60.00." The sums "80" and "60" evidently mean that $80 and $60 were paid on the note at the times stated. The two last payments indorsed on the back of the note signed February 24, 1917, appear as follows: "April 13th. 1925 pd to Oliver 24," then underneath this entry appears the next "Feb 14th 1929," "25." The sums "24" and "25" evidently mean that $24 and $25 were paid on the note at the times stated. The two last payments on each note appear to have been preceded by a number of previ-

ous payments made at intervals for years back.

Both suits were filed July 5, 1932, and service was made the next day on the defendants in each case. If payments were actually made on the three notes by Paul Canik and Miller on the 14th of February, 1929, and November 20, 1929, the five-year period of time necessary for the running of the prescription provided for by the law, Civil Code, art. 3540, has not run, and the defense of prescription is not good. The question is highly important to the parties. They each, no doubt, understand the situation.

The note of testimony shows that plaintiff first sought by cross-examination of Paul Canik to establish the payments and dates thereof appearing on the backs of the notes. He admitted making payments, but not within five years previous to the suit. He claimed not to know the handwriting of letters shown to him, and denied having authorized any of the letters exhibited to him, as having been written by him or by his authority or direction.

The plaintiff then took the stand, and testified to having received a payment of $80, indorsed on the note mentioned at the time it was received, but it seems that it came through the mail. He testified that the other payments indorsed on the notes within the last five years were received and indorsed at the time received. But the payments came through the mail. He testified that he received letters and wrote letters to Miller and Canik in reply, which the note of testimony indicates he produced, but was unable to testify that the letters were in the handwriting of Miller or Canik. Some of the indorsements were made by his brother Oliver and some by his brother Isaac. They lived in the parish of Cameron, and would receive the payments and would forward the amounts to plaintiff in New Orleans.

Isaac Vaughan testified that the payments of February 14, 1929, were indorsed by him; that he received the amount from his brother Oliver. Oliver in turn says he received it from Frank Canik, son of Paul Canik, and that Frank told him at the time that it was for credit of his father's note. Mrs. Uri Vaughan corroborates her husband as to the receipt of checks and letters, concerning these notes, through the mail. J. W. Doxey did not know the handwriting of any of the letters, and had not himself made any payments. Frank Canik denied, as a witness, that he had received the $50 from his father and delivered it to Oliver Vaughan to be credited on the notes.

Dr. L. O. Miller, questioned about the check for $80 credited on the note of February 2, 1921, replied:

"Well I gave Mr. Canik a check for $80.00 for Uri. I think it was in the year, 1926. I don't remember exactly though. But I know it is several years back now. I think it was along somewhere in there.

"Q. A check for $80.00? A. Yes sir."

In answer to further questions, he said he thought he had the check at home. Asked if he would produce it, he said he would. Asked if he would file it in the record, his answer was: "If the court demands it, I will sure produce it, if I can find it understand—if it is there, I surely will."

The check is not in the record, and the motion alleges that it was not produced; that instead an ex parte explanation was made, which was not in harmony with his testimony on the subject. The record does not show that the plaintiff asked the court to permit him to recall Dr. Miller and examine him about his inability to produce this check, which, if paid at the time credited, interrupted prescription. The refusal to reopen left the matter without further light on the subject.

Plaintiff offered in evidence letters, marked P–1 to P–7, which he claimed to have been received through the mail, concerning payments made on the notes and the indebtedness sued on. Defendants objected to the letters on the ground that it had not been shown that they had been written by any of the defendants, etc. The objection was sustained. Plaintiff excepted to the ruling, and asked permission to file the letters as part of a bill of exceptions. This was objected to, and the court refused the request. The letters are therefore not before us, not in the record, and the only idea we can form about them is what we gather from representations made in questions asked about them and the answers thereto.

Defendants in their plea of prescription do not attack the payments, which purport to have been made, as being fraudulent, fictitious, and untrue, nor are the dates on which they purport to have been paid said to be false. The plea of prescription in suit No. 765 merely says: "That more than five years has elapsed since the dates of maturity of both the promissory notes sued upon herein and said promissory notes and the right of recovery thereupon have been extinguished by the prescription of five years, which is now pleaded in bar to this suit." In suit No. 757 the averment is substantially the same. If the purported payments and dates of the latter payments had been directly attacked, it would then appear that plaintiff should have been activated into an effort to support his action by making the proof, which he trusts to be able to furnish by means of the subpoena duces tecum and commission to take testimony and other testimony, which he may be able to obtain, if the note of testimony is reopened.

The petition to reopen is too long and enters into too many details to do more than state its substance. We will copy articles 3 and 4, however, from which may be gathered the gravamen of his complaint:

"That on the trial of the said pleas of prescription plaintiff was taken by surprise when the titular defendant, Paul Canik, denied authorship of, knowledge of, or any connection with, the various communications or letters addressed to plaintiff and purporting to be signed by Paul Canik, and also his denial of any payments or any knowledge of payments or any authority or consent to make payments to plaintiff within the last five years before service of process on him; that plaintiff was likewise taken by surprise when defendants, Dr. L. O. Miller and J. W. Doxey, denied any payments within the last five years before service of process on them, or any knowledge of any payments by either them or Paul Canik, or any knowledge of the letters or the handwriting or the authorship of the same."

"4. Plaintiff further shows that notwithstanding the testimony of himself and his two brothers, Isaac Vaughan and Oliver Vaughan, and plaintiff's wife, Mrs. Uri Vaughan, which he submits was positive and unequivocal as to the various payments, that it is possible to strengthen the testimony and place the question beyond cavil by having the records of the following banks brought before the court, as well as the canceled check of Paul Canik and Dr. L. O. Miller, defendants herein, and that the said records and documents will be decisive of the question presented to the court for determination; that plaintiff had no reason to anticipate the necessity of such before hearing the defendants' testimony and was taken by surprise, as was expressed by his counsel, during the trial, and in the furtherance of justice and to save another trial of this case and a multiplicity of lawsuits, plaintiff applies to this Honorable Court to re-open this case for the introduction of further evidence and for further trial; and in addition thereto shows that certain documents and records in the possession of the defendants and in the possession of the following named banks are absolutely necessary and essential, material, important and indispensable to a complete knowledge of the facts involved and the issues presented, and that the same should be ordered brought into court in order that the court might have the benefit thereof."

■ Dealing with plaintiff's argument that the note of testimony should be reopened, there is no question of subrogation, legal or conventional, under the Civil Code, art. 2159 et seq., entering into the matter. Therefore, if payments coming through the mail or otherwise received were made on these notes at the times and as appears by the credits indorsed thereon, the holder of the note would naturally suppose that the payments came from the debtor, if they purported to do so. And, there being no direct plea on the part of the defendants that the payments credited on the notes, annexed to the petition, as well as the dates of the purported payments, were not genuine, the plaintiff was thereby the more easily led to assume that the makers of the notes might be depended on to admit making payments at the times stated as well as the authorship of the letters, which the plaintiff produced, if the letters purport to have been written by them or by their authority and direction. Friends and relatives do now and then pay out money for friends and relatives, but ordinarily it is not done, and there is no claim that friends and relatives made these alleged payments.

After reading the testimony of plaintiff, his wife, and of Paul Canik, Frank Canik, Dr. L. O. Miller, and of Oliver and Isaac Vaughan, we find that plaintiff was no doubt surprised by unexpected denials. It may be that he acted unwisely in taking chances with defendants, but we do not find that his trust should be regarded, under the facts and circumstances, as negligence and laches.

When the court refused to reopen the case, there was nothing left for plaintiff to do except to submit the case on the testimony taken, and, when his demand was rejected on the ground that his action was prescribed, to take an appeal and urge his motion on appeal.

■ The trial judge in refusing the motion said: "An application for a new trial or to reopen a case for the introduction of further evidence is a matter, which is addressed largely to the conscience of the court." This is correct. 7 Louisiana Digest, "Trial," § 34; 9 Louisiana Digest, "Trial," § 34. But there may be an abuse of discretion productive of injury, and, when such is the case, the position is not good.

In Succession of Lefort, 139 La. 51, 71 So. 215, Ann. Cas. 1917E, 769, the Supreme Court, acting on a refusal to reopen a case for further evidence, used this language: "The judgment of the court refusing to admit further evidence will not be reversed by this court unless it is manifestly erroneous and productive of injustice." Succession of Lefort, 139 La. 51, 71 So. 215, 220, Ann. Cas. 1917E, 769.

Viley v. Wall, 154 La. 221, 97 So. 409, and McKee v. Godwin, 156 La. 725, 101 So. 120, are cases ordered reopened and further evidence heard.

"The matter is one resting in the discretion of the court. It may decline to reopen the case and unless there has been an abuse of discretion, its action will not be disturbed. An abuse of discretion has been held to exist

in some cases." Ruling Case Law, vol. 26, subject, Trial, § 48, pp. 1042 and 1043.

The court further said: "* * * No showing has been made as to what this evidence is or will be, counsel does not tell the court, that he knows what the evidence is." The court in making this statement likely had in mind the provisions of the Code of Practice, arts. 559 and 560, on the subject of new trial. It is not necessary that a motion to reopen a note of testimony, made before the case is submitted to the court, should contain the requirements of a motion for a new trial. It is sufficient if the motion contains averments which show that the reopening is necessary to the ends of justice and come within the provisions of the Code of Practice, articles 473, 474, 475, 138, 140 and 141.

The Code of Practice, art. 484, provides that, after "the argument commences, no witness then can be heard, nor proof introduced except with the consent of all the parties." In this instance the argument had not commenced. The case had not been submitted to the court.

Article 475 provides that, "if in the course of the suit either party discovers that his interests require the introduction of titles and papers in the possession of the adverse party, or of a third person, the court shall, on application, order the production of such * * * papers."

In Wolff v. Wolff, 47 La. Ann. 458, 17 So. 126, the motion was made on the morning the case was taken up for trial. In the present case, the taking of testimony had been concluded, except the Miller check, if it could be found, was to be filed.

The meaning of the word "suit," as used in article 475, is defined in articles 95 and 96 to be synonymous with action or demand. Starns v. Goodwyn et al., 43 La. Ann. 302, page 307, 8 So. 931; Weston v. City Council of Charleston, 2 Pet. 449, pages 462 and 463, 7 L. Ed. 481.

The motion was timely made, and the right depended on the situation as it existed at the time. Ordinarily, one trial is sufficient, and we do not easily grant another, but in this instance we think the refusal to reopen amounted to an abuse of discretion productive of injury to the plaintiff.

Paul Canik, one of the defendants and appellees herein, has, since it was submitted, departed this life, leaving surviving him Mistress Paul Canik, his widow in community, and seven children, to wit, Frank F. Canik, Steven Canik, Joseph Canik, George Canik, Veronica Canik, Caroline Canik, and Gertrude Canik, all born of his marriage with her, and his said widow and his said children, being his sole heirs, have by order of this court been made parties defendant, appellees, in the place and stead of said Paul Canik, deceased.

For these reasons, the judgment appealed from in suit No. 756 entitled Uri Vaughan v. Paul Canik and L. O. Miller is annulled, avoided and set aside. The note of testimony is reopened, and the case remanded on the question of prescription. The plaintiff is to have an opportunity exercising proper diligence to obtain and to put into the note of testimony further testimony in support of the payments, appearing as credits on the backs of the notes sued on, to show the dates of the payments, and that the payments emanated from the makers of the notes or one of them, that the letters offered in evidence emanated from the makers of the notes or one of them and are in their handwriting, and were written by their authority and direction or one of them, expressly or tacitly given. Plaintiff is to have the right to show, if he can, the interruption of the prescription pleaded by the makers of said notes, by any additional evidence legally obtainable and admissible for the purpose.

The defendants are to have an equal opportunity and like right to obtain and support by any additional admissible evidence the prescription pleaded.

The case to be then resubmitted and disposed of as in due course.