## ENGLISH v. KELLOGG LUMBER CO. et al.

No. 6199.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Dhu Thompson, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff, while working for defendant, the Kellogg Lumber Company, a copartnership, on September 30, 1939, suffered injury to his back and ribs when, while lifting a heavy cross-tie, he slipped and fell across the end of another tie. Disability to continue work was recognized. He was paid compensation at the rate of $7.15 per week to November 17th and was then discharged by defendant's physician as being well and able to resume work. He thereafter filed this suit against the company and its component members to recover compensation at said rate for 400 weeks, less amounts paid him, on the theory that he is totally and permanently disabled to do work of any reasonable character. Defendant

contends that plaintiff's injuries were not serious and that he was well when discharged and has continued in that physical condition. Plaintiff was awarded judgment as prayed for, but limiting payments to the period of disability, and defendants appealed.

### Motion to Dismiss Appeal.

Judgment was signed on March 21, 1940. Orders of appeal were moved for in open court and granted on that date. Appeal bond was approved and filed on March 25th. The filing fee of $5 was deposited with the clerk of this court on April 25th. Return day was fixed for April 29, 1940. Thereafter it was discovered by appellants' counsel that the minutes of the court did not show that appeals were taken, and that the transcript had not been lodged. On May 27th appellants' counsel ex parte moved the court to correct the minutes of March 21st to show that after judgment was read and signed, orders of devolutive and suspensive appeal were entered, the amount of appeal bonds and return day fixed. This motion was sustained and the minutes accordingly corrected. Transcript was filed here on June 19, 1940. Appellee in this court moves to dismiss the appeals, and, as basis therefor, alleges:

(1) That there were no orders of appeal on the record and that no effort was made to correct the minutes or to lodge the transcript in this court until after the expiration of sixty days and after demand for payment of the judgment had been made.

(2) That the correction of the minutes is null and void because done ex parte and after the expiration of sixty days and prior to the transcript being filed here.

We do not think there is any merit in the motion. Mover does not contend that orders of appeal were not asked for and granted in open court; nor does he contend that the minutes, as corrected, do not truly reflect the facts. He simply assails the correction because done without notice to him or his counsel, and because done after the expiration of the return day at which time the transcript had not been lodged.

It is now settled beyond dispute that when the transcript of appeal, without fault on part of the appellant, has not been timely filed in the Court of Appeal to which appeal is taken, no penalty may be visited upon him therefor. The return day is automatically extended by the clerk's delay, error or dereliction. Wilson v. Lee, La. App., 196 So. 373.

In this instance, it clearly appears that the failure to file the transcript before the expiration of the return day was due to error on the part of the minute clerk of the district court in omitting from the minutes the fact that appeals were asked for and allowed. Appellants filed bond and deposited the filing fee timely. This was all the law required of them.

No good purpose would be promoted by remanding this case so that facts, not really denied, might be definitely established. A court has the inherent right at any time to correct its own minutes to conform to true facts transpiring therein. No one may complain of such action unless injury or impairment of rights result therefrom. Certainly appellee has no good ground to complain on this score. The motion to dismiss is overruled.

Plaintiff was hurt between 9 o'clock and 10 o'clock, A. M., but continued to work until the noon hour. He then reported the accident to the company's sawyer, under whom he was working and was by him advised to consult the company physician, Dr. Walsworth, in the City of Monroe. He did so. Dr. Walsworth made a physical examination and thinking that perhaps there was a rib fracture sent plaintiff to Dr. Moore, a radiologist, for X-raying. Pictures revealed that the fifth rib was fractured. Plaintiff then complained of his left side. This side and part of the back were immobilized and the patient sent home for convalescence. The injury was not considered serious by Dr. Walsworth. He saw no clinical reason why plaintiff should not be well in a brief time. However, plaintiff continued to complain of pain to Dr. Walsworth. Another physical examination was made and other pictures taken on November 17th. Dr. Walsworth testified that this examination and the pictures confirmed his prior examination and the first pictures made. Plaintiff was then discharged as well. However, Dr. Walsworth did discover arthritic changes in practically all of the vertebrae.

Dr. Moore confirmed Dr. Walsworth's interpretation of the pictures and his physical findings. Neither found any injury of recent date to the left eleventh rib, nor to any part of the back or spine, excepting the fifth rib.

Dr. C. P. Gray made a general physical examination of plaintiff on February 12th and had pictures made of portions of his back and sides. He found no rigidity of muscles but did find pronounced evidence of arthritic changes in several of the vertebrae. He also found that the fifth rib had been fractured and had healed. In all other respects he found nothing wrong with plaintiff's back or side.

After being discharged by Dr. Walsworth, plaintiff testified that his back and left side continued to severely pain him and for this reason he consulted Dr. Hirsch. This doctor, after close physical examination and tests, satisfied himself that the complaint of pain was not assumed; that there was very limited motion of the back, rigidity of muscles and flattening of the left buttock, characteristic of lesions of the lower spine. These physical findings motivated the making of X-ray pictures. These, in Dr. Hirsch's opinion, confirmed his physical examination and diagnosis. Recent fracture of the eleventh rib, left side, was disclosed, the end thereof attached to the spine being displaced upward. A lime deposit was shown to have been knocked from a vertebra. This was accredited to the trauma. Appropriate treatment was administered.

Dr. Mosely examined and X-rayed plaintiff on October 7th. This picture, according to Dr. Mosely, reflected fracture of the eleventh rib and of the fifth lumbar vertebra. Injuries of this character, he says, grow progressively worse.

Dr. W. L. Smith, who made the pictures for Dr. Hirsch, testified as follows:

"This film shows an old healed transverse fracture of the shaft of the left eleventh rib in its mid-portion. The fragments are in good position. The appearance of the head and neck of the left twelfth rib are suggestive of another fracture at this point. There is slight dislocation of the head of the eleventh rib upward. In addition to that, there was the suggestion of some change at the juncture of the eleventh and twelfth dorsal vertebrae, since the intervertebral space between these vertebrae was not so clearly defined as the intervertebral space between the vertebra above and below. There is also a suggestion of slight upward displacement of the head of the right tenth rib."

The three eminent physicians who testified for plaintiff are firm in the opinion that his injuries at the date of trial were of such character as to render him wholly incapable of performing manual labor, the only kind of work he knows how to perform. On the contrary, three physicians, equally as eminent, testifying for defendants, are clear in the opinion that plaintiff is now physically sound and able to perform heavy work.

Contrary to the general rule, there is no lay testimony in the record to supplement that given by the medical experts. The two lines of medical testimony are beyond possible reconciliation. The deadlock is hopeless. We are impelled because of this lamentable situation to again interject that our ability to comprehend is not sufficiently astute to understand why the opinions of such experts, after viewing the same pictures and physically examining the same person, should vary so widely touching the character and extent of injuries. One side says that the pictures definitely reflect certain pathological conditions, while the other side is as equally positive that such is not true. The ultimate result is that the court is unable to derive much benefit from the maze of hopeless contradictions.

It is certain that plaintiff experienced a heavy fall. This is not seriously denied. We also know that the fall disabled him. It is admitted that the left fifth rib was fractured. All the doctors agree that his vertebrae are affected with arthritic changes. Trauma, of the character sustained by plaintiff, is calculated to and probably did aggravate this condition. He complained regularly of pain in the region of the injuries physicians testifying on his behalf are positive they found to exist. He testified that the pain was so intense and relentless that he could not work and that the exercise of the back and sides quickened it. If the doctors who testified for him are even nearly correct in their diagnoses of his case and in interpreting pictures made by or at their request, the pain and consequent disability should be expected. He was forty-seven years of age when injured. Prior to that time he regularly performed heavy work about sawmills.

Pain is a subjective symptom. When a person complains of having pains, of greater or less severity, proof to negative the correctness of his assertions is not possible of production. Physicians may only say that they can discover no pathological reason for the pain to exist.

The minutes disclose that the trial judge rendered judgment from the bench immediately after submission of the case. Evidently, after seeing and hearing the witnesses, observing plaintiff and appraising the situation while the testimony and incidents of the trial were fresh in his mind, he entertained little or no doubt of the case being made out. After a careful study of the record we are not prepared to say that he erred. We could assign no substantial reason for so deciding. Manifest error of the character to warrant reversal on a question of fact, it seems to us, is not present.

Appellants complain of the lower court's ruling that plaintiff's expert witnesses are entitled to $50 each as fee for testifying. They contend that $15 each would be adequate. These fees were fixed after hearing on rule. The court's ruling was based upon the testimony of the three physicians. Defendants offered no testimony to traverse that of plaintiff. According to this testimony the fees are not excessive. To overrule the trial judge on the question, we would have to act arbitrarily because of lack of any testimony to sustain appellants' position.

Finding no error in the judgment appealed from, it is hereby affirmed.

On Application for Rehearing.

PER CURIAM.

■ To support their application for rehearing, appellants, inter alia, assign as error the allowance of a fee of $50 to each of plaintiff's medical experts. They charge and argue that these fees are excessive in that the physicians all live in the City of Monroe, Louisiana, where the case was tried, and that trial consumed only one day. The reasons for affirming the trial court's ruling on this question are fully set out in our opinion. However, we did omit saying therein that the case was on trial two days and not one as erroneously alleged in the application for rehearing. Presumably, these witnesses were in attendance in Court both days. There is nothing in the record to indicate otherwise. We are pleased to supplement our reasons on the subject by referring to this material fact, as it was not our purpose nor intention to set a precedent whereby medical experts residing in the place where trial is had would be entitled to demand and receive $50 per day for attending

Court and giving testimony as such. On this point, the case of Sam Diggins v. Salley & Ellis et al., 199 So. 442, decided by this Court in November 1940, is pertinent.

The application for rehearing is denied.