### DIGGINS v. SALLEY & ELLIS et al.
No. 6189.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Clark & Thompson, of Monroe, for plaintiff-appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for defendants-appellees.

TALIAFERRO, Judge.

Plaintiff's back was injured on July 27, 1939, while working for defendants, Salley & Ellis, a copartnership, when the movable scaffold, 5 feet high, on which he was standing, turned over and precipitated him to a concrete floor. He was paid compensation for 7 weeks at the rate of $10.40 by his employer's insurer. He sues his employer and its individual members to recover compensation at the weekly rate of $12.48 for 400 weeks, on the theory of total permanent disability, less amounts paid, and for medical expenses.

Defendants deny plaintiff's right to compensation to the amount claimed by him and aver that immediately after he was injured they sent him to Drs. McHenry and Simonton in the City of Monroe for treatment; that these doctors rendered to him competent services and treatment, but notwithstanding this, and while being paid compensation, on August 31st, he wilfully and arbitrarily abandoned said treatment and left the care of said physicians and procured the services of a physician of his own choice; that at the time he did this he had practically recovered from the effects of his injury, and, in fact, did fully recover therefrom within a month thereafter. In the alternative, it is averred that should it be proven that plaintiff had not fully recovered on or before October 1st, in that event, it is alleged that he would have done so had he allowed defendants' doctors to continue the treatment they were administering to him.

Prior to trial, defendants made a legal tender of compensation at the rate of $10.40 per week for the period from September 14th to October 1st, plus accrued costs. They had previously paid the sanitarium, doctors and medical bills.

Judgment for compensation at the rate of $10.40 per week for 12 weeks, less amounts paid, was rendered. Fees of plaintiff's experts were fixed. Both sides appealed. Here, plaintiff insists that he is entitled to compensation for 400 weeks, while defendants argue that he is due no more than they tendered to him in excess of the amounts previously paid. The amount of expert fees is contested by defendants.

Promptly after falling, plaintiff was carried to the office of Drs. McHenry and Simonton in the City of Monroe for examination and treatment. He then complained of pain in his back. X-ray pictures were made of that part of his anatomy by Dr. W. L. Smith, a skilled radiologist, which revealed no bone pathology. Dr. McHenry concluded that plaintiff had sustained only a strained back which he regarded as a not serious injury and which he thought would be well within 8 weeks. Sedatives were given to alleviate the pain and the back was strapped. The patient was then sent to his home. The following day he telephoned Dr. McHenry that he was suffering considerable pain and could not walk to his office. He was then placed in a sanitarium. Heat treatments were there administered. The back was again strapped and sedatives given. He was required to remain in bed. These doctors continued to treat plaintiff at the sanitarium for 14 days. He then returned to his home. About this time he began to complain of pain in his left foot. He was treated at his home until August 31st. The doctors then thought he was getting along satisfactorily and would be well within 10 days or 2 weeks. They saw him no more in a professional way thereafter and had no opportunity to do so.

On or about August 31st, plaintiff, being dissatisfied with the progress of his case, removed the straps from his back and engaged Dr. C. H. Mosely to treat him. Dr.

Mosely made pictures of his spine. These, according to his interpretation, revealed a fracture of the fifth lumbar vertebra with displacement forward, a chip off of the fourth lumbar vertebra, traumatism of the left foot and a bone chip of the right foot. A plaster cast was then applied to give rest to the spine and to relieve the sciatic nerve of pressure from the displaced vertebra. Dr. Mosely thought this nerve was impinged by the fractured vertebra, causing the pain of which complained. The cast was being worn at date of trial, December 20th. Dr. Mosely then thought plaintiff totally and permanently disabled to do manual labor.

The pictures made by Dr. Mosely were interpreted by Drs. John Snellings, J. W. Cummings and R. M. Simonton in addition to Drs. W. L. Smith and McHenry. Not one of these doctors was able to see in them the bone injuries Dr. Mosely discerned therein. These pictures, as regards pathological conditions, they all say, are not unlike those made by Dr. Smith. All of these physicians, save Dr. Mosely, testified for defendant. They all agree that plaintiff suffered only a strain or sprain to the lumbar part of the back, which, they say, with proper treatment and co-operation of the patient, should have entirely healed in from 8 to 12 weeks at the most.

■ The medical testimony clearly preponderates in favor of the contention that there was no bone injury whatever. It also supports defendants' contention as to the character of the injuries.

It is shown that the treatment given plaintiff for a sprained or strained back is a proper treatment; that it is approved by the best thought of the medical fraternity. It is also shown that for such an injury the application of a cast to immobilize the spine is not only improper treatment but will actually aggravate the injuries. Use of a cast is proper in cases of back fractures. Dr. Snellings, as to use of the cast, testified as follows: "Put it on there and leave it for a month or six weeks and it will make it stiff for five or six weeks. It will take that long to get over it. You can take a well man and put his arm up in a splint and keep it there for six or eight weeks and it will be stiff and it will take some little time to work it out."

Contrary to the general rule, it is made clear that had plaintiff co-operated freely with the capable physicians in whose charge he was placed and followed their advice, his injuries would have completely healed prior to the filing of this suit. He evidently became impatient at what he thought was unsatisfactory progress of the treatment and in acting as he did, if now disabled, has no one to censure save himself. Rest and inaction by the patient, it is conceded, are indispensable to the attainment of early and satisfactory results in a case of this character.

The lower court obviously took the same view of the case as do we. In allowing compensation for 12 weeks, the court gave plaintiff the benefit of the maximum period in which his injuries should have disabled him.

In passing, it is apropos to say that the many proven exaggerations and mis-statements of fact by plaintiff militate against giving to his testimony the probative weight ordinarily due and accorded to a litigant. Dr. McHenry is strongly inclined to think him a malingerer and that the hope of receiving more compensation motivated his course of conduct.

■ This case consumed all or parts of 2 days for trial. As there is nothing in the record to the contrary, it may be assumed that all witnesses, lay and expert, were present on each day. The lower court fixed Dr. Mosely's fee at $50 and Dr. Hirsch's at $25. Plaintiff used Dr. Hirsch in rebuttal, but the greater part of his testimony was ruled out on objection. This fact should not militate against his right to receive a fee as an expert.

■ We are advised that it is a rule of the lower court to allow as much as $75 to each side in a suit to pay fees of expert witnesses. Presumably, the trial judge intended to follow this rule when fixing said fees; and since the case was on trial more than one day, we are not prepared to hold that he abused the discretion vested in him. Act 19 of 1884; McCoy v. Arkansas Natural Gas Corp., 193 La. 238, 190 So. 391.

Plaintiff filed in this court a motion to remand. He alleges that at time of trial and after the transcript was lodged in this court he continued to suffer pain from his injuries and being impecunious and unable to procure additional medical treatment he went to the Charity Hospital in New Orleans for treatment; that the doctors who examined and treated him there advised that he was suffering from a fracture of the spine; that the diagnosis of his case

at the hospital corroborated that made by Dr. Mosely; that the reports on his condition prepared by the hospital doctors disclose these facts and would be valuable evidence in his behalf if given an opportunity to introduce them; that he has endeavored to procure copies of said reports so that they could be attached to and made a part of the motion to remand, but his efforts were unsuccessful; that the production of said reports could be forced by the lower court if a new trial is granted.

Counsel for plaintiff asserted in oral argument that he felt certain the sought reports would be in his hands soon thereafter and wished the right to file same in the record after submission of the case. Photostatic copies of said reports have been filed since the case was submitted. Attorneys for defendants consented to their filing in conjunction with the motion, but not as evidence in the case.

Unless the contents of these reports are sufficient to serve as a basis for a reversal of the judgment, it would be vain and useless to remand the case for their reception in evidence under the terms of Act 90 of 1938. Houghton v. Hall, 177 La. 237, 148 So. 37. We have read the reports and are clear in the opinion that if their contents were in the record as evidence, plaintiff's case would be strengthened very little, if any, therefrom. The X-ray reports corroborate defendants' contention that plaintiff's spine was not injured; that there was no fracture of the vertebra. The motion is denied.

Being of the opinion that the judgment appealed from is correct, it is hereby affirmed with costs.