On November 16, 1940, the plaintiff suffered an accidental fall in the course and scope of his employment as a laborer by the Hardwood Lumber Company of Louisiana, in the Parish of Calcasieu. It appears that after his fall, he was referred to Dr. R.G. Holcombe, who examined him and treated him until about March 26, 1941, at which time he discharged the plaintiff as a malingerer. Dr. Holcombe testified that he examined the plaintiff on the day of the accident, November 16, 1940, and that at that time all he found wrong with him was that he had a 4-plus Wassermann, and accordingly he treated him for syphilis, giving him shots therefor, but that after four administrations the shots were discontinued after March 18, 1941, due to the manifestation of a skin lesion.
The plaintiff was paid compensation until on or about March 28, 1941, when he was discharged by Dr. Holcombe. Thereafter both the employer and the insurer refused to pay additional compensation. On December 26, 1941, the plaintiff filed this suit against the insurer and the employer, alleging that plaintiff had been, and was still totally and permanently disabled as a result of the accident of November 16, 1940, and that therefore he was entitled to compensation at the rate of $8.39 per week, or 65% of his weekly wage of $12.92, for the period of 400 weeks, less the compensation heretofore paid. The allegation of disability is to the effect that as a result of the accident the plaintiff's left hip and sacro-iliac region were injured and a preexisting syphilitic condition was aggravated.
The defendants, in their answer, admitted plaintiff's employment at the alleged weekly rate of pay, and admitted that on November 16, 1940, plaintiff claimed that he had suffered a fall and some slight injuries, and that he was then sent to Dr. R.G. Holcombe for examination and medical attention, and admitted that he had been *Page 490 
paid 18 weeks of compensation, but denied all other material allegations in the petition, especially the allegation to the effect that plaintiff was totally and permanently injured, or even partially injured, as a result of the accident, or that he is entitled to any compensation beyond that which has already been paid to him.
On trial of the case, the district court rendered judgment in favor of the defendants, dismissing the suit, which had been filed in forma pauperis. Plaintiff has appealed.
Before judgment plaintiff filed a motion to reopen the case for the purpose of introducing testimony generally, contending that one of the basic grounds upon which plaintiff was relying was that the alleged injury augmented and aggravated a preexisting syphilitic condition, and that during the trial testimony had been introduced tending to show that plaintiff had been cured of his syphilitic condition, and to the motion was attached an affidavit of Dr. H.D. Alverson of Shreveport, supporting the contention that plaintiff was still suffering from syphilis, and reciting further that examination of X-ray plates made by Dr. Hatchette, which are in the record, by Dr. Alverson, shows lack of alignment of certain vertebrae, and an arthritic condition in the fifth lumbar vertebra. This motion was duly heard by the lower court, and was duly considered in connection with the annexed affidavit of Dr. Alverson, and the court reached the conclusion that Dr. Alverson's affidavit did not connect his findings with the accident of November 16, 1940.
After rendition of judgment, the plaintiff filed a petition for a new trial, based on the allegations of the motion to reopen the case, and to this new motion, which was filed within three days after judgment, attached a certificate of Dr. Carl Kuehn, connected with the Health Unit of Lake Charles, to the effect that plaintiff was attending the Anti-Syphilitic Clinic and that a test of June 10, 1942, was positive for syphilis. Thereafter, and more than three days after rendition of judgment, plaintiff filed a supplemental motion for a new trial, annexing thereto an affidavit of Dr. Charles H. Mosley of Monroe, Louisiana, to the effect that Dr. Mosley examined the plaintiff on December 3, 1942, and that X-ray plates made by him showed certain injuries to the vertebrae, and also osteomyelitis, traumatic, of right ilium, with 1/5 of bone destroyed, due possibly to the blow on his hip when he fell. In the affidavit, Dr. Mosley states further that physical examination revealed spasm of muscles of back and a crooked spine, and concluded that plaintiff has the appearance of a negro definitely sick and injured and totally and permanently injured for manual labor.
The defendants objected to the supplemental motion for new trial on the ground that it was filed more than three days after judgment and hence came too late, but the District Court admitted the filing thereof, and, on hearing of the motion and supplemental motion, refused a new trial.
The questions presented to us on appeal are: Did the lower court rule correctly on the motion to reopen; did the lower court rule correctly on the motion for a new trial; and did the lower court commit manifest error in his findings of fact on the trial of the merits?
The motion to reopen the case is based on the affidavit of Dr. Alverson, to the effect that he examined the plaintiff and found that he had syphilis and that he had certain rigidity of the muscles of the lower spine and lack of alignment among the vertebrae of the lumbar spine, and arthritis in and about the fifth lumbar vertebra, and that he, Dr. Alverson, as well as Dr. G.H. Cassity, who assisted him in the examination, felt that plaintiff was disabled at the time of the examination, to-wit: February 18, 1942.
The motion for new trial is based on the above, plus the certificate of Dr. Kuehn, and the supplemental motion for a new trial is based on the aforesaid, plus the affidavit of Dr. Mosley.
It is also contended by counsel for plaintiff, in his motions, that he was unable to secure such medical evidence of disability because of the lack of means of his client and lack of cooperation by doctors in and around Lake Charles, and he contends, in effect, that now that he has secured the medical data from Drs. Alverson, Cassity, Kuehn and Mosley, he should be given the opportunity of introducing their testimony, and that he feels confident with their testimony he can establish the allegations of the petition to the effect that his client is totally and permanently disabled.
It is, of course, fundamental that the trial court has a wide discretion in determining whether or not a case should *Page 491 
be reopened or should be tried over, and unless we can find that the district judge has abused this discretion, we should not overrule his rulings on these motions.
"Application for new trial or to reopen case for introduction of further evidence is addressed largely to conscience of court, and its action will not be disturbed, in absence of abuse of discretion." Vaughan v. Canik, La.App., 152 So. 364.
In so far as the affidavit of Dr. Alverson is concerned, the trial judge states that the doctor does not connect his findings with the accident alleged to have been sustained by plaintiff. He states: "This affiant, however, does not state or even suggest that the syphilitic condition which the affiant found in the plaintiff was augmented or aggravated by the accident of November 16, 1940; nor does the affidavit declare with any degree of certainty or even beyond a probability that the lack of alignment in certain vertebrae or the arthritic condition which he found was any more than probably due to an accident."
Apparently the trial judge had the same view with reference to the certificate of Dr. Kuehn and the affidavit of Dr. Mosley.
The trial judge properly refused to admit any evidence on the motions. There is some question as to whether or not the filing of the supplemental motion for new trial should have been allowed, since it was filed more than three days after judgment, but since it was overruled, that question does not seem important, and besides, the defendants do not urge, in this court, their objection to the filing of the supplemental motion.
In view of the fact, as found by the trial judge, that there does not appear to be any causal connection between the findings of Drs. Alverson, Kuehn and Mosley and the alleged accident, and the further fact that there is no satisfactory explanation on the part of the plaintiff why the evidence now sought to be introduced could not have been obtained prior to the trial of the case, we do not feel that we can find the trial court abused the discretion vested in him. Furthermore, a reading of the affidavits in question will, in our opinion, show that they are not sufficient to overcome the medical testimony which has already been introduced in this case, and, unless the contents of these affidavits were deemed sufficient to serve as a basis for reversal of the judgment, it would be vain and useless to remand the case. See Diggins v. Salley Ellis et al., La.App., 199 So. 442.
As set forth by the trial judge in his written reasons for judgment, there were three lay witnesses and one expert medical witness called by the plaintiff, and four expert medical witnesses called by the defendants. John Thompson and Cal Davenport testified that they were fellow employees of the plaintiff and that they saw the plaintiff fall, being only a few feet from the scene of the accident. Both of these witnesses testified that before the accident the plaintiff was well and healthy, but that since the accident he looks "puny". Davenport also testified that plaintiff has limped since the accident. The other lay witness, Lizzie Owens, testified that plaintiff and his wife live in her house, and before the accident he appeared all right, but since the accident, he "just lays down and hops along with a stick".
Dr. Di Giglia, called by the plaintiff, and Drs. Holcombe, Watkins, Moss and Hatchette, all called by the defendants, all testified that they had examined the plaintiff at various times and that they found no bone fractures or any other evidence of any injury caused by the accident. Dr. Hatchette, a radiologist, testified that he made X-Ray plates of the plaintiff's spine, hips and back, and that from an examination of these pictures, which are in evidence, he found no evidence whatever of any injury, abnormality, or disease involving any joints or bones. Dr. Di Giglia and Dr. Holcombe found that plaintiff was suffering from a syphilitic condition, but they did not connect the syphilitic condition with the accident. Dr. Watkins testified that he made no blood test, but that an examination of January 6, 1942, showed that plaintiff did not have syphilis. But this statement appears to be based on his impression or information given to him. In any event, the medical testimony appears to be unanimous to the effect that plaintiff has no objective symptoms of injury, and his testimony as to subjective symptoms of pain is supported only by the lay testimony. In view of that situation, it does not appear that the lower court committed any manifest error in finding that the plaintiff had failed to establish his claim to a legal certainty.
For these reasons, the judgment is affirmed. *Page 492