288 So.2d 676 (1974)
PRODUCING MANAGER'S COMPANY, INC.
v.
BROADWAY THEATER LEAGUE OF NEW ORLEANS, INC., and William Perry Brown, Jr.
No. 5598.
Court of Appeal of Louisiana, Fourth Circuit.
January 25, 1974.
*677 Raymond J. Salassi, Jr., Jones, Walker, Waechter, New Orleans, for plaintiff-appellant.
William F. Wessel, New Orleans, for defendants-appellees.
Before REDMANN, J., and HUFFT and WICKER, JJ. Pro Tem.
THOMAS C. WICKER, Jr., Judge Pro Tem.
This is a suit for the balance due on a contract, under the terms of which Broadway Theater League of New Orleans agreed to pay to Producing Managers Touring Company the sum of $10,000.00 ". . . No later than 9:30 P.M., April 4, 1970." in payment for Producing Managers furnishing a complete company for a limited engagement of Arthur Miller's The Price.
On April 2, 1970, Producing Managers Touring Company, Inc., was paid $1,310.00 as advance payment against the contract. The play was produced in New Orleans on April 2, 3, and 4, 1970. On April 4, 1970, William P. Brown, Jr., President of Broadway Theater League of New Orleans, Inc., delivered to the Touring Company check No. 550, payable to "Producing Manager's Touring Company" in the amount of $8,690.00. This check, drawn on the account of "Showtime" in the Bank of Louisiana in New Orleans, was signed "W. P. Brown, Jr." and bore the notation: "Balance of payment of total of $10,000.00 for 4 performances of THE PRICETHE BROADWAY Theater League of New Orleans, Inc."
The evidence adduced at trial revealed that "Showtime" was a trade name used by Brown who, on March 12, 1965, while opening the "Showtime" account, stated in writing that he was the sole owner of the unincorporated business operating under that name. The bank records also reflected that the only signature required on checks drawn on the "Showtime" account was the signature of "Wm. Perry Brown, Jr."
On April 8, 1970, Producing Manager's Touring Company, Inc., deposited their "Showtime" check in account # XX-XXX-XXX, Irving Trust Company, New York. After going through regular banking channels, the check was returned unpaid to the payeedepositor on April 17, 1970. The returned check contained a notation that *678 the maker's signature did not agree with that on file at the bank. Charles Stortz, who was an assistant cashier with the Bank of Louisiana, testified that at all times material hereto, there were insufficient funds in the "Showtime" account to cover the amount of the check in question, and the signature was defective.
The trial court, finding that suit was brought by the wrong party, rendered judgment in favor of defendants-appellees and against plaintiff-appellant, dismissing the suit at plaintiff's costs.
The trial court expressed the view that while Mr. Brown may have had no initial obligation to pay Broadway Theater League's debts under the contract, by giving his personal check in the amount of $8,690.00, and by specifying thereon that his check represented the balance due on the contract in question, Brown personally assumed the debt of a third party, i. e., Broadway Theater League of New Orleans, Inc. The lower Court concluded, however, that since the contract was made with Producing Manager's Touring Company, Inc., it was the proper party to institute this action. The court found no valid assignment of the debt from Producing Manager's Touring Company, Inc., to Producing Manager's Company, Inc., nor was the required notice of the assignment made to defendants. Plaintiff has appealed devolutively from the above judgment to this court.
Appellant specifies three errors on the part of the lower court:
1. Failure to find the existence of a valid assignment of the indebtedness to Producing Manager's Company, Inc., from Producing Manager's Touring Company, Inc.;
2. Failure to find that the notice given of the assignment at the trial was sufficient;
3. Failure to reopen the trial and allow appellant to amend the petition to conform the pleadings to the evidence adduced at the trial.
Although the debt due by Broadway Theater League of New Orleans was one due and owing to Producing Manager's Touring Company, Inc., this suit was brought by Producing Manager's Company, Inc.
Appellant subscribes to the view that no factual evidence was introduced to show that it did not have the right to bring this action. It is the opinion of this court, however, that such an argument is without merit. Even the most cursory examination of the exhibits discloses that the contract was entered into between Producing Manager's Touring Company, Inc., and Broadway Theater League of New Orleans, not with Producing Manager's Company, Inc. As noted by the trial court, the check given by Mr. Brown was made payable to Producing Manager's Touring Company, Inc., and the record discloses that it was this corporation that later endorsed and deposited the check in a New York bank account under its control. The clear and unavoidable import of such factual evidence is that appellant did not have the right to bring this action.
Further, appellant contends that there exists a valid and sufficient assignment of the indebtedness by Producing Manager's Touring Company, Inc., to Producing Manager's Company, Inc. The testimony reveals that Producing Manager's Touring Company, Inc., was a wholly owned subsidiary of Producing Manager's Company, Inc. The only testimony offered by appellant to show the existence of such an assignment was that offered by Mr. Shapiro, an owner and principal of both corporations. He testified that the amount due the subsidiary under this contract was carried on the books of the parent corporation as an obligation due it. The trial court, however, in its reasons for judgment, took cognizance of earlier testimony by Mr. Shapiro, wherein he admitted that there was no written assignment. The court further reasoned that since the check given *679 by Mr. Brown was made payable to Producing Manager's Touring Company, Inc., and since that corporation deposited the check in its own account, these facts would tend to discredit Mr. Shapiro's testimony that the indebtedness was carried on the books of the parent corporation. Furthermore, this court takes notice of the the fact that when formal demand for payment of the debt was actually made by letter dated May 7, 1970, it was made on behalf of Producing Manager's Touring Company, Inc., and not on behalf of appellant.
We agree with appellant that our courts, in construing Louisiana Civil Code Article 2642, have taken the view that no special form or words are necessary to constitute a valid assignment, nor need an assignment be in writing. Rolf v. Lewis, 165 So.2d 12 (La.App.2nd Cir. 1964); Dale, Inc., v. Killilea, 94 So.2d 146 (Orl. App.1957). A valid assignment, however, will not be found to exist where the record is devoid of credible evidence showing an assignment did in fact exist. While it is acceptable that there need not be any particular statutory form for a valid assignment, there must, nevertheless, be evidence of such an assignment.
The law is clear and well settled that an action can only be brought by a person having a real and actual interest in that which he asserts. Louisiana Code of Civil Procedure Article 681. A plaintiff must prove that he has some interest in prosecuting the suit in order to establish his rights to recover damages, just as he must prove any other essential allegation of the petition. Preferred Investment Corp. v. Denson, 251 So.2d 455 (La.App.1st Cir. 1971); Scott v. Ware, 160 So.2d 237 (La.App.2nd Cir. 1964). Thus, if plaintiff fails to prove his interest to the Court's satisfaction, his suit will generally be dismissed for failure to prove an essential element of his right to recovery. Geigy Chem. Corp. v. Rada, 264 So.2d 279 (La. App.4th Cir. 1972); Scott v. Ware, 160 So.2d 237 (La.App.2nd Cir. 1964).
In this case the absence of proof of a valid assignment is discernible from the record, and for that reason we concur in the finding by the trial court that there was no valid assignment of the indebtedness from Producing Manager's Touring Company, Inc., to Producing Manager's Company, Inc.
In view of this concurrence, we deem it unnecessary to discuss appellant's contention that no additional notice of said assignment was necessary or required.
Appellant finally contends that the trial court erred in not reopening the trial and allowing appellant to amend the petition to conform the pleadings to the evidence adduced at trial. Our jurisprudence recognizes that an application to reopen a case is addressed largely to the conscience of the court. Huderston v. Am. Mutual Liability Co., 14 So.2d 489 (La.App.1st Cir. 1943); Vaughan v. Canik, 152 So. 364 (La.App.1st Cir. 1934). In matters such as these, the discretion of the trial court to grant or refuse such a motion is almost plenary and our courts have taken the position that unless that discretion is abused or positive injustice will result therefrom, reviewing Courts will not undertake to override the decision of the trial court judge. La.Code of Civil Procedure Article 2164; Nolte v. Nolte, 258 So.2d 118 (La. App.2nd Cir. 1972); McKinney v. Levy, 212 So.2d 279 (La.App.3rd Cir. 1968); Huderston v. Am. Mutual Liability Co., 14 So.2d 489 (La.App.1st Cir. 1943); Hornsby v. Rives, 2 So.2d 532 (La.App.2nd Cir. 1941); Vaughan v. Canik, 152 So. 364 (La.App.2nd Cir. 1934). In the case at bar, we find no such abuse of discretion on the part of the trial judge in refusing to reopen the case after its submission in order that pleadings may be amended or supplemented.
Additionally, appellees in their answer have sought damages for frivolous appeal. We find this argument totally lacking in merit. It is obvious to this court that there was sufficient conflict in *680 the testimony to form a reasonable basis for appeal.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.