# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2025

Lyle W. Cayce
Clerk

No. 24-30639

—————————

WILLIAM G. NAVARRE,

*Plaintiff—Appellant*,

*versus*

AIG PROPERTY CASUALTY COMPANY,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:22-CV-1862

———————————————————————

Before ELROD, *Chief Judge*, and KING and GRAVES, *Circuit Judges*.
JAMES E. GRAVES, *Circuit Judge*:

Appellant William Navarre alleges his house purchase included an assignment of post-loss insurance rights to pursue claims related to hurricane damage. Appellee AIG Property Casualty Company (AIG) contends that the assignment was not executed until seven months after Navarre filed suit, and after the relevant prescriptive period had already elapsed on his claims.

No. 24-30639

Because we agree that Navarre lacked standing, we AFFIRM the district court's judgment.

## BACKGROUND

Two hurricanes struck Lake Charles, Louisiana in August and October 2020, damaging the home of Bal and Rita Sareen. The Sareens filed a claim through their AIG homeowner's policy. AIG issued the Sareens payments totaling $392,466.52 and closed the file on January 21, 2021. The Sareens' policy provided that any action against AIG must be brought within two years of a loss.

On May 8, 2021, Bal Sareen entered into a "buy-sell agreement" with William Navarre, agreeing to close the sale on or about June 30, 2021. The same day, they executed an addendum to their "buy-sell agreement" ("Addendum A"), agreeing to later "execute an Assignment & Power of Attorney which will contain an assignment by Seller to Buyer of the right to receive and collect insurance proceeds for any loss or damage" caused by Hurricanes Laura and Delta. On June 16, 2021, the Sareens and Navarre executed a "Side Letter Agreement to Louisiana Residential Agreement to Buy or Sell" (the "Side Letter"), with nearly identical provisions. These documents also provided that the Sareens would transfer $205,000 in remaining insurance proceeds to Navarre.

The Sareens and Navarre closed on the property on June 30, 2021, and the Sareens transferred their remaining insurance proceeds a few days later. Navarre testified that he never personally met the Sareens, they never spoke over the phone, and all discussions related to the property transaction were between agents.

Contrary to their agreements in Addendum A and the Side Letter, they did not create or execute the referenced "Assignment & Power of Attorney" at closing. Navarre believed the $205,000 was far from sufficient

2

to repair the property, and his attorneys reached out to AIG to pursue his claim for further insurance proceeds.

On June 23, 2022, Navarre filed suit in the Western District of Louisiana to recover damages under the Sareens' Louisiana Homeowner's policy, bringing state-law claims against AIG for breach of insurance policy, and breach of the statutory duty of good faith and fair dealing. He claimed he was the assignee as of May 8, 2021.

On January 3, 2023, the Sareens and Navarre executed a document entitled "Assignment of Post-Loss Insurance Claims & Limited Power of Attorney" (the "Assignment"). The Assignment stated that "Sellers hereby convey, transfer, and assign any and all rights, title and interest that Sellers may have in and to any insurance claims, . . . and to all insurance proceeds" resulting from Hurricanes Laura and Delta.

AIG filed a motion for summary judgment in August 2024, contending that Navarre lacked standing. The district court agreed with AIG, concluding Navarre was not the proper party to file suit on June 23, 2022, "because the assignment had not been executed and thus Navarre[] was not the assignee," and the prescriptive period on any claims had run by the time the Assignment was executed.

This appeal followed. Navarre now contends that, although Addendum A and the Side Letter "may have contemplated the execution of further documents at the time of closing," those documents themselves created a valid assignment of post-loss rights as of the closing date. According to Navarre, the January 2023 Assignment was executed "only out of an abundance of caution" and was "[un]necessary," "superfluous, [and] duplicative." He argues parol evidence may be used, in conjunction with the written contract, to deduce the parties' intent. And, for the first time on appeal, he asserts that the parties created an independent oral assignment.

No. 24-30639

## STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The district court's grant of summary judgment is reviewed "de novo, construing all facts and inferences in the light most favorable to the nonmoving party." *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016).

## DISCUSSION

Because this court sits in diversity, we apply the substantive law of the forum state, Louisiana. *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). The parties agree Louisiana law governs the interpretation of the buy-sell agreement and its supplemental documents.

In Louisiana, "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor." LA. CIV. CODE ANN. art. 2642. Post-loss rights arising from an insurance contract are assignable unless the law, the terms of the contract, or the nature of the contract preclude an assignment. *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So. 3d 328, 334 (when plaintiff brings suit as assignee, they can bring claims as an insured); LA. CIV. CODE ANN. art. 1984; LA. CIV. CODE ANN. art. 2642.

Any action, however, "can only be brought by a person having a real and actual interest in that which he asserts." *Producing Manager's Co. v. Broadway Theater League*, 288 So. 2d 676, 679 (1974) (citing LA. CODE CIV. PROC. ANN. art. 681). And "[a] party who demands performance of an obligation must prove the existence of the obligation." LA. CIV. CODE ANN. art. 1831. AIG contends, and the district court agreed, that Navarre lacked standing to bring suit on June 23, 2022, because the Assignment had

4

not yet been executed. According to the district court, once the Assignment was executed in January 2023, the two-year prescriptive periods beginning at the time of the loss from each hurricane had already elapsed (in August and October 2022, respectively).

An assignee is "governed by the same prescriptive rules" as his assignor. *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1112. In *TCC Contractors, Inc.*, a purported assignee of insurance rights, TCC, had not been assigned those rights on the day it filed suit—accordingly, it was not the proper party. *Id.* When the assignment was executed, TCC only acquired "those existing rights and causes of action that [the insurer] had as of that time." *Id.* And, by that point, prescription had run on the claims. *Id.* at 1117. The Louisiana appellate court reasoned that the after-acquired assignment could not "operate retroactively to cure the plaintiffs' deficient original petition and to bootstrap a timely right of action" against the insurer. *Id.* at 1113.

Louisiana law limits a party's right of action pursuant to an insurance contract to "twenty-four months . . . after the inception of the loss when the claim is a first-party claim," and allows parties to contract for longer prescriptive periods. LA. STAT. ANN. § 22:868. The Sareens' "Homeowners Amendatory Endorsement-Louisiana" states that any action against AIG under the policy's property coverage must be brought "within two (2) years after a loss occurs."

Navarre does not contest the two-year prescriptive period or that an assignor-assignee relationship must exist when the purported assignee files suit. Rather, he contends a valid assignment *did* exist starting on the closing date, June 30, 2021. Accordingly, the main dispute centers on whether Addendum A or the Side Letter assigned post-loss insurance rights to

Navarre. (To the extent Navarre alleges an independent oral assignment occurred, he forfeited any such contention by failing to present it in the district court. *Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021).)

Under Louisiana law, "[t]he common intent of the parties to a contract is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract." *Ochoa v. Aldrete*, 21-632 (La. App. 5 Cir. 12/8/21), 335 So. 3d 957, 965. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE ANN. art. 2050. "[A] contract is 'ambiguous' when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used." *Ochoa*, 21-632, 335 So. 3d at 965 (citation omitted).

Navarre contends the plain language of Addendum A and the Side Letter, supported by outside evidence of party intent, created an assignment of post-loss rights as of June 30, 2021, the property closing date. AIG asserts that while an assignment was *contemplated* in Addendum A and the Side Letter, one was not created until January 3, 2023, when the parties executed the "Assignment & Power of Attorney." Further, AIG argues parol evidence of party intent is inadmissible because the language in Addendum A and the Side Letter is clear.

Addendum A and the Side Letter each repeatedly reference a specific *future* document to be created and executed: the "Assignment & Power of Attorney." Addendum A lists rights that the Assignment "will contain" upon execution, and notes that post-loss rights would be assigned "to the extent assignable." The Side Letter contains the same language. Each document establishes that the Sareens would retain their rights until the

6

Assignment was executed.  And, although Addendum A and the Side Letter include a *draft* of an assignment, the draft is indented to indicate its separation from the rest of the document.

Neither the plain language in Addendum A, nor the plain language in the Side Letter, amount to a present assignment of rights.  Instead, the assignment was subject to a suspensive condition: creation and execution of the "Assignment & Power of Attorney."  *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 76 ("A conditional obligation is one dependent on an uncertain event.  If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.") (quoting LA. CIV. CODE ANN. art. 1767).  Unless and until the Assignment document was created and executed, no obligation existed.  *See Hanks v. Wilson*, 93-0554 (La. App. 1 Cir. 3/11/94), 633 So. 2d 1345, 1350–51.

Navarre contends the parties subjectively intended for an assignment to take effect at closing.  But, whether the Sareens and Navarre intended an assignment or not, contract law principles forbid the court from looking into it.  "[W]hen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties."  *Prejean v. Guillory*, 2010-0740 (La. 7/2/10), 38 So. 3d 274, 279; *see also Perfection Metal & Supply Co. v. Indep. Supply of N.O. Inc.*, 97-800 (La. App. 5 Cir. 1/14/98), 707 So. 2d 86, 90 ("[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.") (quoting LA. CIV. CODE ANN. art. 2046).

Navarre apparently concedes such clarity, repeatedly admitting in the district court and on appeal that Addendum A "contemplated the execution

of further documents at the time of closing[.]"   And he does not allege ambiguous language in his appellate brief, but rather the opposite:  he states that "[t]he Side Letter Agreement could not be clearer," and "unequivocally 'set over, transferred, and assigned'" post-loss rights.  In an effort to reach this interpretation, Navarre relies on the Side Letter's "whereas" clauses.  But, although recitals can be used to clarify the meaning of an *ambiguous* contract, "we are unable to end our inquiry by mere examination of the contract's 'introductory' provision" and "[t]he contract must be read as a whole giving meaning to each passage."  *McCary v. Oceaneering Int'l, Inc.*, 2017-1163 (La. App. 1 Cir. 2/27/18), 243 So. 3d 613, 617 (citing La. Civ. Code Ann. art. 2050).  We read each document, as a whole, as an agreement to create and execute an assignment at a later date.

Navarre lacked standing to sue on June 23, 2022, because the Sareens had not assigned him their rights.  *See Producing Manager's Co.*, 288 So. 2d at 679.  By the time the Assignment was finally executed, prescription had run.  *See* La. Stat. Ann. § 22:868; *TCC Contractors, Inc.*, 2010-0685, 52 So. 3d at 1112–13.  An untimely assignment "[can]not operate retroactively to cure the plaintiffs' deficient original petition and to bootstrap a timely right of action" against the insurer.  *TCC Contractors, Inc.*, 2010-0685, 52 So. 3d at 1113.  None of Navarre's evidence cures this essential defect.

\* \* \* \* \*

For the reasons stated above, we AFFIRM the district court's judgment.